UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
      Plaintiff,

vs.                                     CASE NO.: 21-CR-28 (APM)

KELLY MEGGS
      Defendant.
_____/

**DEFENDANT'S RENEWED REQUEST
FOR PRETRIAL RELEASE AND INCORPORATED MEMORANDUM OF LAW**

      COMES NOW the defendant, KELLY MEGGS, by and through undersigned counsel and files this Renewed Request for Pretrial Release and Incorporated Memorandum of Law as in support of this request states:

      1.      Mr. Meggs is charged by a second superseding indictment with several offenses related to crimes allegedly committed at the U.S. Capitol in Washington, D.C, on Wednesday, Jan. 6, 2021. These offenses include conspiracy against the United States government in violation of Title 18 U.S.C. § 371; Destruction of Government Property in violation of Title 18 U.S.C. § 1361; Obstruction of an Official Proceeding in violation of Title 18 U.S.C. § 1512(c)(2) and Entering and Remaining in a Restricted Building or Grounds Access in contravention of Title 18 U.S.C. § 1752(a)(1). (Doc. 77)

      2.      Mr. Meggs was taken into custody on February 17th, 2021 in the Middle District of Florida and has since remained in custody.

      3.      He is a fifty-two-year-old resident of Marion County, Florida having resided in the City of Dunellon for at least the past twelve years. He never served in the military nor has he undergone any paramilitary training.

4.     The home in which he lives is owned by both himself and his spouse and is one in which they have significant financial equity.   They have two adult children who also reside on their property.    As the Court is aware, Mr. Meggs' spouse, Connie Meggs, is also named as a defendant in the instant indictment.

5.     As of the date of his arrest, Mr. Meggs had been stably employed for a significant length of time in a senior management position at a large automobile dealership in the North Central Florida area.

6.     He has no other pending criminal cases in any jurisdiction and no prior criminal history except for one remote misdemeanor arrest in Florida for which it appears the charge was dismissed.

7.     With respect to the allegations against him in the instant second superseding indictment, and despite the inflammatory language used therein, there are no direct acts of violence alleged to have been committed by him nor is there evidence thus far of damage inflicted by him to any government property.   Moreover, while he is alleged to have "prepared himself for battle" by donning certain protective attire, there is no allegation he possessed any type of weapon at any time on January 6th.

8.     Mr. Meggs previously moved for pre-trial release in the Middle District of Florida, where he resides and was initially taken into custody.   The court there detained him by written Order, a copy of which is attached hereto as Exhibit "A."

9.     Despite disagreement with the findings of the magistrate judge in the Middle District of Florida, those findings are acknowledged.   However, in the time since the initial detention hearing, significant information has come to light that militates strongly in favor of the

defendant's pretrial release.

10.     When Mr. Meggs (and Connie Meggs, for that matter) was initially arrested he waived his Constitutional right to remain silent and voluntarily gave a detailed interview to law enforcement.  At the time of his detention hearing this was statement was not disclosed to the defendant despite the government's knowledge of its contents.  Information recently revealed by the government directly corroborates the statements made by both Meggses as to their actiions on January 6th.  Specifically, Mr. Meggs stated that, at the time he entered the Capitol building, the doors through which he entered had already been damaged.  This is consistent with information disclosed by the government in the form of an email; specifically, as follows:

> The doors through which your clients entered the building were among those parts of the Capitol that were damaged.  Three glass window panes on those doors were broken, an exterior handle was torn off, and one of the door stops was broken, among other damage.  Capitol surveillance video footage as well as publicly available video footage suggests that the damage to the glass window panes on these doors was done prior to your clients' entry through the doors.  The timing of the other damage is not clear at this time.

11.     This also directly contradicts the allegation in the indictment that Mr. Meggs "forcibly entered the Capitol and thereby caused damage to the building in an amount more than $1,000.00." Doc. 77 ¶ 82.

12.     During the initial detention hearing, the government inaccurately stated that, during the events of January 6th, 2021, a police officer was beaten to death with a fire extinguisher by protesters, the blatant falsity of which had to be pointed out by the undersigned.

13.     The clear intent of the government in making this representation was to inflame the court, which it apparently did.

14.     The government also, quite incredibly, informed the court there was a concern that, if the Meggses were granted bail, they would kill federal law enforcement officers attempting to arrest them if they violated the terms of their pre-trial release.  This statement was made with the full knowledge of the government that Mr. and Mrs. Meggs had been completely cooperative with the government agents during their initial contacts with law enforcement.

15.     What the government failed to disclose was that, during the prior interviews of both Mr. and Mrs. Meggs, they separately described an incident inside the Capitol during in which they saw a "large" Capitol Police Officer being surrounded and threatened by an angry mob, so they positioned themselves between the officer and crowd to protect him.  It is suggested this claim will be supported by video evidence.

16.     Based on the information developed since the initial detention hearing, it is respectfully requested that the defendant be granted pre-trial release on terms and conditions to which the Court may be amenable which would insure his appearance at all required court proceedings and protect the community from whatever danger the Court believes he may pose.

17.     Should he be released on bail, Mr. Meggs is prepared to appear either via video conference or personally at his own expense in the District of Columbia as the Court may require.

CONCLUSION

Based on the above facts and following legal analysis, Mr. Meggs respectfully requests this court grant this request for pre-trial release and impose any combination of conditions sufficient to satisfy the court that any perceived risk of non-appearance he may pose would be substantially mitigated and any danger to the community eliminated.

## **MEMORANDUM OF LAW**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739 (1987).

The federal bail reform provisions, found in 18 U.S.C. § 3142 of the Bail Reform Act, (the "Act") provide the court with four options for setting bail matters before it. These options are:

(1) release the defendant on personal recognizance or unsecured bond;
(2) release the defendant on conditions;
(3) temporarily detain the defendant to permit revocation of conditional release, deportation or exclusion; or
(4) detain the defendant.

Section 3142(g) of the Act sets forth the factors the judicial officer shall consider in making the determination whether to release a person charged with an offense:

(1)  the nature and circumstances of the offense charged;

(2)  the weight of the evidence;

(3)  the history and characteristics of the person including:

(a) the defendant's character;
(b) physical and mental condition;
(c) family ties;
(d) employment;
(e) financial resources;
(f) length of residence in the community;
(g) community ties;
(h) past conduct;
(i) history relating to drug or alcohol abuse;
(j) criminal history;
(k) record of appearance at court proceedings;
(l) whether at the time of the current offense or arrest the defendant was on probation, parole or other release pending trial, sentencing, appeal or completion of a sentence; and
(m) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

Title 18 U.S.C. § 3142(b) mandates pretrial release ("shall order the pretrial release") on

personal recognizance or an unsecured appearance bond unless the court determines that "such release will not reasonably assure" the person's appearance or "will endanger the safety of any other person or the community." The Act emphasizes release on personal recognizance or an unsecured appearance bond; however, the court may also consider whether ensuring the safety of the community warrants detention. *See United States v. Williams*, 753 F.2d 329 (4th Cir. 1985); *United States v. Harris*, 732 F. Supp. 1027 (N.D. Cal. 1990).

An accused's ties to the community is one factor that courts look to in evaluating the flight risk of a defendant. *See* 18 U.S.C. § 3142(g)(3)(A). While the defendant concedes the community to which these ties are considered is that in which the charges are levied, Mr. Meggs is a long-time resident of Marion County, Florida with significant familial and financial ties there. These ties clearly demonstrate a stability in life and residence as well as family dependent on his help. He likewise possesses the resources to appear as required in the judicial district in which he is charged.

And while, quite frankly, Mr. Meggs previously had no significant ties to the district in which he is charged, he perhaps now has the most important of tie of all, the authority of this Court. He is not a flight risk in any way, shape or form.

The weight of the evidence against the accused is another factor to be considered at the detention hearing, *United States v. Apker*, 964 F.2d 742 (8th Cir. 1992), but it is the least significant factor, *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990). In the words of one district court judge, to presume risk of flight from strong "evidence" of guilt would be "tantamount to a presumption of guilt." *United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987).

Despite the language employed by the government in alleging the facts in the second superseding indictment, the verbiage reflects nothing more than the donning certain defensively

protective attire and entering the Capitol building with others.  While the severity of the January 6th incident cannot be overstated, Mr. Meggs is not alleged to have engaged in any acts of violence or encouragement of others to do so, in fact, Mr. Meggs has a good faith belief that video evidence will support his statement that he, in fact, placed himself in harm's way to protect a law enforcement officer from a threatening crowd and in no manner caused damage to any government property.

The prosecution bears the ultimate burden of establishing that no series of conditions is sufficient to negate the risk of the accused's flight or dangerousness—by a preponderance of the evidence in the case of flight and by clear and convincing evidence in the case of dangerousness. *United States v. English,* 929 F.3d 311, 319 (2d Cir. 2011); *see also Stone*, 608 F.3d at 946; *United States v. Bell*, 209 F. Supp. 3d 275, 277 (D.D.C. 2016) (*citing, United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)); *United States v. Rodriguez*, 147 F. Supp. 3d 1278, 1286 (D. N.Mex. 2015); *United States v. Guerra-Hernandez*, 88 F. Supp. 3d 25, 26 (D.P.R. 2015).

Clear and convincing evidence means proof that the particular defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger. *United States v. Patriarca,* 948 F.2d 789 (1st Cir. 1991). Only when there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *Ploof*, 851 F.2d 7. *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988). Mr. Meggs has no criminal history and there is zero proof that he engaged in any criminal activity after June 6th, 2021 up until being taken into custody on February 17th, immediately after which he fully cooperated with government agents.

The statute requires that a defendant be detained only if he or she represents a *serious* risk

of flight. That is a substantial burden for the government to meet. *See United States v. Giordana,* 370 F. Supp. 2d 1256 (S.D. Fla. 2005) (serious *charges* do not necessarily equal serious flight risk). Mr. Meggs does not possess a passport and, as stated above, there is virtually zero risk of non-appearance by him.

If the Court determines that personal recognizance or an unsecured bond will not reasonably assure appearance or will endanger any other person or the community, 18 U.S.C. § 3142(c) still mandates release ("shall order the pretrial release") subject to certain specified conditions. The conditions, which must include that the person not violate any federal, state or local law, must be the least restrictive conditions necessary to reasonably assure the person's appearance and the community's safety. The provision that conditions "reasonably assure" appearance and safety does not require a guarantee of appearance or safety. *See United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990)*; United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), *cert. denied*, 479 U.S. 950 (1986). It requires an "objectively reasonable" assurance of community safety and the defendant's appearance at trial. *Id.* Imposition of conditions of release must be supported by reasons why they are necessary to reasonably assure appearance or safety. *United States v. Spilotro*, 786 F.2d 808 (8th Cir. 1986). These can easily be satisfied.

Should the Court determine that this matter is subject to the rebuttable presumption of detention pursuant to Title 18 U.S.C. §3142, the defendant would argue that the facts disclosed herein are sufficient to rebut the applicable presumption.

Based on an application of the facts presented in this matter to the applicable law, there exist several release conditions this Court can impose on Mr. Meggs sufficient to rebut any presumption that he may pose a serious risk of flight or danger to the community and which would

facilitate his appearance before the Court.

The undersigned has conferred with Assistant United States Attorney Jeffrey Nestler, Esq., who asserts the government's position is that Mr. Meggs should remain detained.

RESPECTFULLY SUBMITTED,

/s/ David Anthony Wilson
DAVID ANTHONY WILSON
201 S.W. 2nd Street, Suite 101
Ocala, FL 34471
(352) 629-4466
david@dwilsonlaw.com
Trial Attorney for Defendant
D.C. Bar ID: FL0073

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17th, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Office of the United States Attorney.

/s/ David Anthony Wilson
DAVID ANTHONY WILSON