IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No.  1:21-cr-28 (APM) |
| | ) |
| KELLY MEGGS, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR RECONSIDERATION

The Court should deny Defendant Kelly Meggs's motion to reconsider (ECF 129) his detention.

On March 26, 2021, the Court conducted a bond review hearing for Defendant Meggs, and ultimately decided that he was such a danger to the community that he should remain detained pending trial.  Nothing in Defendant Meggs's motion for reconsideration changes that calculus.

Defendant Meggs proffers that the clothing he was wearing when he stormed the Capitol on January 6, 2021, was present inside his house in Dunnellon, Florida, at the time the FBI executed a search warrant on February 17, 2021.  He attached to his motion two photos of some items that he claims he and his wife were wearing on January 6.[1]

During the search on February 17, the law enforcement personnel – and there were approximately 19 of them, mostly from the FBI and some from the local sheriff's office – were specifically looking for the clothing and items that Kelly and Connie Meggs were wearing on January 6.  For approximately three hours, the law enforcement team searched all corners of the house and property, including approximately 22 rooms (which the FBI labeled A through V), a

---

[1] On April 9, 2021, Defendant Meggs's counsel provided to the FBI three helmets, three vests, and multiple shirts and other items.

garage, a shed, a travel trailer, and three additional vehicles. The government submits that it is unlikely that the large volume of materials that the FBI collected from Defendant Meggs's counsel – including three helmets and three vests – were present on Defendant Meggs's property on February 17 and simply overlooked by the FBI. It is more likely that the items were secreted elsewhere and then retrieved by co-defendant Connie Meggs after her release (or by other individuals).

Regardless, the presence of these items should not change the Court's decision as to Defendant Meggs's detention. The Court did not base its decision on whether Defendant Meggs got rid of the clothing he had been wearing on January 6. Rather, the Court stated:

> But more importantly, in my view, Mr. Meggs has presented himself as somebody, through his words and his deeds and his conduct as somebody who presents a danger, because he is somebody who's a leader, somebody who was communicating not just within the Oath Keepers but with other organizations and prepared to come to Washington, D.C. to do violence….
>
> And then, perhaps most troubling of all, and this is, frankly, in all of the evidence that I've seen and presented with, the most express statement about somebody coming to Washington for something other than just a political rally. After learning that the Vice President would count the Electoral College votes, he writes, "that checks all the boxes. I think this is why we were called here. Anything less would be a terrible mistake. The natives are restless. Tell your friend this isn't a rally." And then he tells that same person: "Be very cautious." You know, all of those communications that happened before the 6th are indicative of somebody who is prepared for and planning for violence in the streets of Washington, D.C.

3/26/21 Tr. at 25, 28.

In making its findings, the Court only once mentioned that Defendant Meggs may have "destroyed evidence or secreted evidence." *Id.* at 31. The Court stated:

> The fact that none of his clothing has been found that he was wearing on that day and that there is this text-message chain between he and his wife that suggests that maybe he got rid of it, lessens the reliability that Mr. Meggs may have of complying with any conditions of release.

*Id.*

The state of the evidence is that Defendant Meggs likely *did* hide the items: The FBI did not locate them during the thorough search. Moreover, at the hearing, the Court noted the equivocal state of the evidence, using words like "suggests" and "maybe." And the Court found that this fact "lessens" the reliability of Defendant Meggs complying with release conditions, not that all reliability is removed.

Regardless, the Court's finding that Defendant Meggs may have secreted evidence was only one of four factors the Court considered in concluding that no combination of conditions would assure the safety of the community. *See id.* at 31-32 (mentioning secure communications, financial means, and being "less than forthcoming" in his FBI interview). The other factors – even if the items were in fact inside Defendant Meggs's house at the time of the search – still warrant Defendant Meggs's detention.

For all these reasons, Defendant Meggs's motion for reconsideration should be denied.

                              Respectfully submitted,

                              CHANNING D. PHILLIPS
                              ACTING UNITED STATES ATTORNEY

By: _____
     Jeffrey S. Nestler
     Assistant United States Attorney
     D.C. Bar No. 978296
     Ahmed M. Baset
     Troy A. Edwards, Jr.
     Jeffrey S. Nestler
     Kathryn Rakoczy
     Assistant United States Attorneys
     U.S. Attorney's Office for the District of Columbia
     555 4th Street, N.W.
     Washington, D.C. 20530

*/s/ Alexandra Hughes*

Alexandra Hughes

Justin Sher

Trial Attorneys

National Security Division

United States Department of Justice

950 Pennsylvania Avenue

NW Washington, D.C. 20004