**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal No. 21-28-8 (APM) |
| **KELLY MEGGS,** | ) ) ) | |
| **Defendant.** | ) ) | |

## ORDER

Defendant Kelly Meggs asks the court to reverse its decision that he be detained pending trial and order him released on "significant conditions." See Def.'s Mot. for Recons., ECF No. 129 [hereinafter Def.'s Mot.], at 4. Although styled as one for "reconsideration," *see id.* at 1, the court construes Defendant's motion as one seeking to reopen his detention hearing based on new information bearing on the question of pretrial release, *see* 18 U.S.C. § 3142(f)(2)(B) (permitting the court to reopen a bond hearing if it "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community"). That new information, according to Defendant, is the production of the clothing and gear that he wore on January 6, 2021. *See* Def.'s Mot. at 1–2. Defendant offers that evidence to rebut the government's assertion at the detention hearing that Defendant may have destroyed or hidden that evidence, as a search of Defendant's home and property failed to turn up the clothing and gear. *See id.*; Hr'g Tr., ECF No. 118, at 7–8. The court cited the absence of that evidence, and the possibility that Defendant may have destroyed

or hidden it, as "lessen[ing] the reliability that Mr. Meggs may have of complying with any conditions of release." Hr'g Tr. at 31.

Defendant's production of the clothing and gear he wore on January 6 does not alter the court's conclusion that no combination of conditions would ensure the safety of the community. For one, although Defendant suggests that the FBI was negligent in failing to locate the evidence during the search, and that it was "at the residence" all along, Def.'s Mot. at 3, Defendant does not represent where within his residence the clothing and gear were located. The court shares the government's skepticism that law enforcement just overlooked this key evidence. As the government details, there were 19 law enforcement officers present, and they "were specifically looking for the clothing and items that Kelly and Connie Meggs were wearing on January 6." Gov't's Opp'n to Def.'s Mot. for Recons., ECF No. 153, at 1. The officers searched 22 rooms, "a garage, a shed, a travel trailer, and three additional vehicles." *Id.* at 1–2. It is unlikely that they just missed the Oath Keeper clothing and tactical gear they were actively seeking. The more probable scenario is that the evidence was initially hidden and then produced only when doing so was deemed beneficial to Defendant. The court's concern about Defendant's potential secreting of evidence therefore has not abated.

In addition, the court identified other factors that left it convinced that no release conditions would ensure the safety of the community. The court cited Defendant's knowledge of how to use encrypted communications, which would make it difficult to monitor his communications. *See* Hr'g. Tr. at 32. The court was particularly concerned about the inability to monitor Defendant's encrypted communications due to "the depth of his planning and preparation" for the events of January 6 and his leadership role in that planning. *Id.* The court also noted that Defendant was less than forthcoming in his FBI interview and that he was a person of means as additional reasons

2

for questioning whether he would comply with conditions of release.  *See id.*  Defendant's motion does not address, let alone negate, those considerations.

Finally, evidence produced during a co-defendant's subsequent detention hearing has only heightened the court's concerns about Defendant's dangerousness.  During the detention hearing of co-defendant Kenneth Harrelson, the government produced evidence that, once inside the Capitol building, Defendant and others walked to the north side of the Capitol toward the Senate chamber, only to be turned away by police officers.  *See* Gov't's Opp'n to Def.'s Mot. for Recons. of Conditions of Release, ECF No. 152, at 17–18.  Defendant and others then walked to the south side of the Capitol toward the House chamber.  *See id.* at 18.  He apparently was searching for at least one member of Congress in particular—House Speaker Nancy Pelosi.  In a communication sent on the evening of January 6, an unidentified third person said to Defendant, "[w]as hoping to see Nancy's head rolling down the front steps," to which Defendant answered:  "We looked forward her."  *See id.* at 19.  The word "forward" is almost certainly a typo, and what Defendant meant to convey is that he and others "looked for" Speaker Pelosi.  This new evidence only confirms the court's original assessment of Defendant's dangerousness, and that his release would endanger the community.

For the foregoing reasons, Defendant's Motion for Reconsideration, ECF No. 129, is denied.

Dated:  April 23, 2021

Amit P. Mehta
United States District Court Judge