UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
    Plaintiff,

vs.                                                                         CASE NO.: 21-CR-28 (APM)

KELLY MEGGS
    Defendant.
_____/

**DEFENDANT KELLY MEGGS' MOTION
TO SUPPRESS OUT OF COURT IDENTIFICATION**

    COMES NOW the defendant, KELLY MEGGS, by and through undersigned counsel and files this, his MOTION TO SUPPRESS OUT OF COURT IDENTIFICATION pursuant to Rule 12 of the Federal Rules of Criminal Procedure, the Fifth and Sixth Amendments to the United States Constitution and other applicable authorities and as grounds in support of this Motion would show:

    1.    The defendant is charged in a multi-defendant indictment with conspiracy, obstructing a government proceeding, destroying government property, entering restricted grounds and tampering with documents or proceedings. Doc 196.

    2.    The government has disclosed to the defense a statement given on May 18th, 2021, by U.S. Capitol Police Officer Harry Dunn, who was inside and on the grounds of the U.S. Capitol on January 6th, 2021.  In the statement he described having observed a "really tall guy" near the lobby of the Speaker's office inside the Capitol. Mr. Dunn identified the "really tall guy" as Mr. Meggs, based on what the investigator described as an "internet photograph" shown to Officer Dunn more than four months after the incident.

    3.    To date, all of the media and CCTV images disclosed in discovery purporting to be

of Mr. Meggs in the Capitol building show that he was at all times wearing a "gaiter" style face mask and helmet which obstructed virtually his entire face.

4.  Upon inquiry, the government disclosed to the undersigned the "internet photograph" shown to Officer Dunn which was, in fact, the booking photo taken in the Marion County, Florida jail after Mr. Meggs' arrest.  This photograph is simply a headshot with no height reference. There were no photographs of other individuals shown to Officer Dunn. The photograph is attached hereto as Exhibit "A."

5.  The government further disclosed that it intends to use Officer Dunn as a witness in the trial of this matter and elicit from him identification testimony as to Mr. Meggs.

5.  The fact that a single photograph was displayed to the government witness and the technique used by law enforcement personnel in exhibiting the photograph explicitly denied the defendant due process of law in violation of the United States Constitution.

6.  Moreover, the pretrial showing to the witness of the single photograph of Mr. Meggs was so "impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *See Simmons v. United States*, 390 U.S. 377 (1968); *United States v. Marson,* 408 F.2d 644 (4th Cir. 1968). As a result, any attempted in-court identification should be suppressed as unreliable and tainted by the pretrial identification.  For these reasons, and for such other and further reasons as may become apparent at a hearing on this motion or after any additional discovery is furnished in connection with the photographic "array," the pretrial identification and any attempted in-court identification by Officer Dunn should be suppressed.

10. The undersigned has consulted with Assistant United States Attorney Jeffrey Nestler who notes the government's objection to the relief requested herein.

WHEREFORE the defendant, KELLY MEGGS, respectfully requests this Honorable Court grant this motion and enter its Order suppressing any identification evidence and testimony by Office Dunn; and (b) an order precluding testimony regarding witness confidence with respect to any identification evidence that the Court may deem admissible at trial.

## MEMORANDUM OF LAW

The test to be applied in determining whether an identification procedure is impermissibly suggestive is whether it is "so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate the accused's due process rights." *United States v. Foster*, 394 U.S. at 442 & n.2. "[I]n some cases the procedures leading to an eyewitness identification may be so defective as to make the identification inadmissible as a matter of law." *Id*.

In deciding whether to exclude identification evidence, courts must examine the totality of the circumstances. *Neil v. Biggers*, 409 U.S. 188 (U.S. 1972); *United States v. Bagley*, 772 F.2d 482 (9th Cir. 1985), *cert. denied*, 475 U.S. 1023 (1986). In *Manson v. Brathwaite*, 432 U.S. 98 (1977), the Court set forth the standards for a motion to suppress due to suggestive pretrial identifications. The Court held that "reliability is the linchpin" in determining the admissibility of identification testimony and applied the "totality of the circumstances" standard. Relevant factors to be considered are: (1) the opportunity of the witness to view the criminal at the time of the offense; (2) the witness' degree of attention; (3) the accuracy of any prior description by the witness; (4) the level of certainty demonstrated by the confrontation; and (5) the time between the occurrence of the crime and the confrontation. *Manson*, 432 U.S. at 104; *Biggers*, 409 U.S. at 199-200; *United States v. Field*, 625 F.2d 862 (9th Cir. 1980).

From the time the Supreme Court recognized a due process right to exclude from evidence tainted eyewitness identifications, the Supreme Court has looked unfavorably on "show-up" procedures (procedures where the police show the witness a single suspect and ask whether or not the witness can identify the suspect as the perpetrator of the crime). In *Stovall v. Denno*, 388 U.S. 293 (1967), the first Supreme Court case regarding identification procedures, the Supreme Court acknowledged that the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Id*. at 302.

Forty-five years later, in 2012, the Supreme Court affirmed that the police-arranged show-up at issue in *Stovall* was "undeniably suggestive," but explained that the *Stovall* court had upheld the procedure under the due process clause because the procedure was necessary (noting that necessity was "crucial" to the *Stovall* decision). *Perry v. New Hampshire*, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). The Tenth Circuit Court of Appeals has also declared that "show-up identifications are less than ideal" and "should be employed only if compelled by extraordinary circumstances." *United States v. Natalini*, 42 F. App'x 122, 127 (10th Cir. 2002). In other words, show-up procedures are inherently suggestive and their use is improper unless the procedures are necessary under the circumstances. *See United States v. De Jesus-Rios*, 990 F.2d 672, 677 (1st Cir. 1993) (agreeing that in-person show-up procedure was impermissibly suggestive); *Mason v. United States*, 414 F.2d 1176, 1182 (D.C. Cir. 1969) (excluding pre-trial eyewitness identification because "[t]he showing of a single photograph is, like all identification procedures involving a single suspect, highly suggestive" and the procedure was "completely unnecessary"); *United States v. Thomas*, 981 F. Supp. 2d 229, 234 (S.D.N.Y. 2013) ("The Second Circuit has consistently condemned the exhibition of a single photograph as a suggestive practice, and where no

extenuating circumstances justify the procedure, as an unnecessarily suggestive one."). The reason for this rule is sound: [T]he single photo or one-person show-up implies that the police have their man and suggests that the witness give assent. Suggestibility is one of the principal ways in which memory plays tricks and leads to improper identifications. *United States v. Brown*, 471 F.3d 802, 804 (7th Cir. 2006). Avoiding the use of show-up procedures, where feasible, minimizes the risks of misidentification that are associated with asking a victim or witness to accurately remember and identify a stranger, who was observed only briefly, during a traumatic crime. *Id*.

Here, any interaction between Mr. Meggs would have happened during a time frame of only a few minutes, at the most, and during a chaotic time of significant stress for Officer Dunn when Mr. Meggs would have been among a large crowd many of whom were similarly attired, wearing facemasks and headgear. Mr. Dunn's prior description of the person he later generically described as Meggs as simply being "a really tall guy" bears no resemblance whatsoever to the single and unduly suggestive booking photograph shown to him.

The facts here weight heavily in favor of precluding any identification testimony by Officer Dunn and an analysis of the facts at hand under the judicially required criteria amply demonstrates the reasons for this.

DATED this 5th day of August, 2021.

RESPECTFULLY SUBMITTED,

/s/ David Anthony Wilson
DAVID ANTHONY WILSON
201 S.W. 2nd Street, Suite 101
Ocala, FL 34471
(352) 629-4466
david@dwilsonlaw.com
Trial Attorney for Defendant
D.C. Bar ID: FL0073

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5th, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Office of the United States Attorney.

/s/ David Anthony Wilson
DAVID ANTHONY WILSON