**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>     Complainant,<br> v.<br><br>KELLY MEGGS<br><br><br>*(Styled as <u>USA v. Thomas Edward Caldwell</u>*<br>*incorporating cases against multiple Defendants)*<br>        Defendant | Criminal Case No.<br><br>1:21-cr-28-8-APM<br><br><br>Assigned to the Honorable<br>Amit Mehta, District<br>Court Judge |

**MOTION FOR ISSUANCE OF A *SUBPOENA DUCES TECUM*
TO THE U.S. CAPITOL POLICE**

Comes now Defendant, Kelly Meggs, by counsel, and hereby requests that the Court, by the Clerk, issue a subpoena to the Custodian of Records of the U.S. Capitol Police and for his grounds states as follows:

**BACKGROUND**

1. The documents demanded are undeniably not just potentially but actually exculpatory information that the Government is required to produce under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

2. The failure of the Government to produce these documents may lead to the dismissal of the case, as shown and explained by the Honorable Emmet Sullivan, District Court Judge, in the failed prosecution of U.S. Senator Ted Stevens (R-Alaska).

3. Of course, the information and documents that the Government must produce under *Brady v. Maryland* as potentially "exculpatory" include evidence that

might show the actual innocence of the accused, but also evidence that might establish defenses (such as here, Kelly Meggs being shoved through an open door by the press of the crowds behind him, which the Government likely has video of), and evidence that might show that a lesser crime applies (such as concerning *mens rea*, here the "rest of the story" of conversations from which the Government has plucked statements by Kelly Meggs out of context), or evidence that might argue for lesser punishment if one is convicted.

4. The Court will understand that it is procedurally necessary to preserve these issues for appeal that these matters be clearly and sharply presented now, not for the first time on appeal.

5. Defendant Kelly Meggs, by counsel, specifically lacks confidence, given the gigantic flood of information that the U.S. Attorney's Office for the District of Columbia is processing and its slow response, that begging for documents from the prosecution will be adequate for the preparation for trial now scheduled for April, 2022.

6. Although Defendants being prosecuted related to events in D.C. on January 6, 2021, are styled as different cases, there is only one U.S. Attorney for the District of Columbia and one single U.S. Attorney's Office, common to all of the Defendants so charged.

7. Although counsel for Meggs has experience with the U.S. Attorney's Office with regard to Defendant Zachary Rehl and has not yet repeated the same shortcomings with regard to Kelly Meggs, it is clear including from discussions among Defendants' attorneys that the same U.S. Attorney's Office, (1) is itself choking

      with a gigantic flood of information in the brave new world of the smart phone revolution reportedly resulting in an estimated 14,000 hours of video, including security camera video from the 751-foot-long U.S. Capitol the size of a small ocean-going cruise ship, (2) is therefore dumping undigested floods of information upon Defendants' counsel, (3) ignoring the specific requests of Defendant such as the undersigned for particularized information that Defendants' counsel through their analysis asserts to be exculpatory from defense analysis, and (4) likely due to the gigantic quantity of information collected under these circumstances, providing enormous amounts of irrelevant or unhelpful information, rather than the specifically identified information that Defendants' counsel identifies as being potentially exculpatory.  That is certainly this counsel's experience with regard to Zachary Rehl.

8. Therefore, counsel here requests a subpoena directly to the U.S. Capitol Police rather than begging for the U.S. Attorney's office to think about it and maybe or maybe not respond after weeks or months of delay.

9. Specifically, here, the documents and information demanded are not merely potentially exculpatory, but actually exculpatory.  These Defendants did not in fact obstruct, hinder, attempt to obstruct, or aid and abet anyone else in obstructing the Joint Session of Congress that was recessed due to the discovery of pipe bombs nearby.

10. The Defendants might be guilty in some people's view of thinking mean thoughts and/or bad manners in a large protest, but they decisively are not guilty of Counts I and II of the Fifth Superseding Indictment ("FSI").

11. Pursuant to 3 U.S.C. § 15 and the Twentieth Amendment to the U.S. Constitution, on January 6, 2021, a Joint Session of Congress convened at the appointed time of 1:00 PM for the hearing of disputes about the selection of Electors to the Electoral College established as a compromise procedure for the selection of a Federal President of the United States and Vice President of the United States.

12. Because Article II, Section 1, of the U.S. Constitution delegates and invests the *Federal* authority to select the Electoral College to the legislatures of every State, and in exercising that *delegated Federal power* the State legislatures are not acting pursuant to their own constitutions or State government structure, only the State legislature has authority and reigns supreme over the selection of Electors for choosing a President and Vice President to the Electoral College. No other state agency or court or official or authority may be heard in contradiction to the State legislature. Thus, it is the presiding officer of the Senate who must lead the Joint Session of Congress in the procedures prescribed by the Constitution and the Electoral Count Act.

13. In other words, no informed, reason-based person could imagine that obstructing the January 6 Joint Session of Congress and preventing it from meeting or completing its meeting could be motivated by any belief that this would produce any benefit to themselves or their preferred candidate for President.

14. Because the Constitution clearly requires that the term of President and Vice President ends every four years at noon on January 20, there is no concept in U.S. Constitutional law for a "hold over" President like a tenant at suffrage.

15. That is, unless the Joint Session of Congress can meet and complete its work,

      there would be no President or Vice President at all at 12:01 PM (noontime) on January 20, and presumably the vacancy would be filled by the Speaker of the House, who on that day was Nancy Pelosi.

16. However, on January 6, 2021, the meeting of the Joint Session of Congress was disrupted by the discovery of ***pipe bombs*** outside of the Republican National Committee national headquarters which is directly across a street intersection diagonally from the Cannon House Office Building and the Democrat National Committee national headquarters

17. That is, the pipe bombs were discovered only within 3-4 blocks of the three office buildings of the U.S. House of Representatives and the House Annex building, and only about 5-6 blocks (estimating the massive grounds of the Capitol as equivalent city blocks) from the U.S. Capitol Building itself.

18. At 12:52 PM, on January 6, 2021, pipe bombs – apparently actual, live, dangerous bombs, not models – were discovered outside of the headquarters of the Republican National Committee, which is the block diagonally across from the Cannon House Office Building and across from the Capitol South subway station, and at 1:50 PM at the headquarters of the Democrat National Committee, which is about 2 blocks further to the South at 430 South Capitol Street.



> Paul Bedard
> @SecretsBedard
>
> Hearing the Capitol Police evacuating buildings around the GOP Capitol Hill Club, including parts of the LOC Madison bldg, apartments, and House Cannon bldg…rumors of pipe bomb in back of the club…
>
> 1:19 PM · Jan 6, 2021 · Twitter Web App

19. Paul Bedard has been a reporter largely covering government and politics for nearly 40 years, including with the <u>Washington Times</u>, USA News and World Report, and the <u>Washington Examiner</u>:

20. ***<u>Paul Bedard's report was at 1:19 PM</u>***.

21. ***<u>Note that</u>*** "LOC" refers to the Library of Congress which is across the street from the U.S. Capitol grounds.  The Madison building is to the South side of the Capitol across Independence Avenue.  It is next door to the House Cannon Office Building also across Independence Avenue from the U.S. Capitol and its grounds.

22. Also note that "the club" refers to the GOP Capitol Hill Club, which is an office townhouse, is directly attached to and next door to the Republican National Committee headquarters townhouse.  [1]  That is, pipe bombs at the RNC HQ are necessarily also at the GOP Capitol Hill Club directly next door and physically attached as office townhouses.

23. ***Also see***, 2 minutes earlier **:**  [2]

---

[1] https://twitter.com/SecretsBedard/status/1346884057276305411?ref_src=twsrc%5Etfw
[2] https://twitter.com/ChrisMarquette_/status/1346883510045466626?ref_src=twsrc%5Etfw



24. Before the tweet at 1:19 PM, buildings were already being evacuated because of reports *of pipe bombs.* Those reports of pipe bombs -- primarily -- caused the ultimate evacuation of the U.S. Capitol at 2:18 PM.[3]

25. The U.S. Capitol Police and the Congress are in effect the complaining agencies or complaining victims whom the U.S. Attorney's Office represents in these criminal prosecutions.

26. However, it is admitted by then-Capitol Police Chief Steven Sund that the pipe bombs – *not the Defendants here* – is what triggered the U.S. Capitol Police to

---

[3] The court may take judicial notice that the House was recessed by the presiding officer at 2:18 PM, pursuant to standing Rule I, Clause 12(b) (allowing for immediate recess without a vote upon notice of a threat). **Congressional Record House Articles | Congress.gov | Library of Congress,** Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1; Congressional Record Vol. 167, No. 4 (House of Representatives - January 06, 2021)
https://www.congress.gov/congressional-record/2021/01/06/house-section/article/H76-4

advise the presiding officers of the House and Senate to recess. [4]

27. Because Rule I, Clause 12(b) was invoked to recess the Joint Session through the U.S. Capitol Police advising the presiding officer to recess, Chief Sund's statement is authoritative, conclusive, and final as to why he advised the presiding officer to recess the official proceeding.

28. Thus, it is the action of the U.S. Capitol Police that caused the recess.

29. But the Chief of the U.S. Capitol Police on February 23, 2021, testified under oath to the U.S. Senate that it triggered a recess because of the pipe bombs – not because of any action by Kelly Meggs.

30. **One of the two complaining witnesses (agencies) has officially admitted, under oath, in sworn testimony to Congress that Defendant Kelly Meggs is entirely innocent of most or all of the charges for which he is indicted.[5]**

31. Judicial estoppel and collateral estoppel applies to bar any variation from Chief

---

[4] Kevin Johnson, "Pipe bombs placed at RNC, DNC night before Capitol riot; feds up reward to $100,000," USA TODAY, January 29, 2021, accessible at: https://www.usatoday.com/story/news/politics/2021/01/29/fbi-increases-reward-info-capitol-pipe-bombs-100-000/4309766001/

[5] It was the Discovery of Pipe Bombs "[t]hat resulted in the evacuation of two congressional buildings, the Cannon House Office Building, as well as one of the Library of Congress buildings. So it took extensive resources," then-Capitol Police Chief Steven Sund said in a joint hearing before the Senate Rules Committee and Senate Homeland Security and Governmental Affairs Committee, February 23, 2021.

> **"So the assault on the Capitol is not what caused the evacuations of those buildings? The discovery of those pipe bombs is what caused the evacuations of those?"** asked Republican Oklahoma Sen. James Lankford.
>
> **"That is correct, Sir,"** said Sund.

https://www.youtube.com/watch?v=vtzwYAh1o30&t=2510s  starting at time 41:45

Sund's sworn testimony before the U.S. Senate committee.

32. Defendant Kelly Meggs peacefully and calmly entered the U.S. Capitol building with his wife, allegedly at about 2:40 PM in FSI ¶¶ 143-144[6]

33. The Joint Session, however, had ***already recessed*** at 2:18 PM according to the Congressional Record or 2:20 PM according to FSI ¶ 8.

34. Defendant Kelly Meggs does not, in fact, own a time machine, to the best of counsel's knowledge and awareness.

35. Thus, Defendant Kelly Meggs did not at 2:40 PM cause or contribute to causing in any way the recess of the Joint Session of Congress 20 to 22 minutes *earlier* at 2:18 to 2:20 PM…

    … assuming he does not own a time machine, which counsel believes he does not.

36. Thus, Defendant Kelly Meggs is entitled to immediate dismissal of the charges against him in Count I and Count II, an order in limine, and if at trial a directed verdict of acquittal, followed by the customary lawsuits for malicious prosecution.

> **"So the assault on the Capitol is not what caused the evacuations of those buildings? The discovery of those pipe bombs is what caused the evacuations of those?"** asked Republican Oklahoma Sen. James Lankford.
>
> **"That is correct, Sir,"** said *[then U.S. Capitol Police Chief]* **Sund.**

https://www.youtube.com/watch?v=vtzwYAh1o30&t=2510s  starting at time 41:45

---

[6] The Government seeks to hypnotize the Court and the jury pool with the word "stack" – meaning just a line of people staying together in a large crowd by putting one hand on the back of their friend in front of them. Such a line is seen at large rock music concerts to help friends stay together when it is too loud to talk to each other is dishonestly referred to as a "stack" and worse a "military formation." People merely walking in a line are not a "military formation." When the jury is seated in two rows, it would be wrong to accuse them of sitting in a "formation." Oath Keepers merely walked in a line, apparently now a crime.

37. This is not a matter of disputed facts to be resolved by the jury.

38. This is an admission under oath, in sworn testimony, by the complaining "witness" (agency) on behalf of whom this criminal prosecution is being brought, along with the U.S. Congress.

39. In spite of now being on the Grand Jury's Fifth Superseding Indictment, the Government has indicted Kelly Meggs and an unwieldy crowd of others with a threadbare, "ink blot test" Indictment.  That is, the Indictment is written like a crime novel, filled with strong adjectives and adverbs, but in the passive voice failing to identify who did what – other than ambiguous statements.

40. The Indictment alleges that "somebody did something."

41. Except that the Government still steadfastly conflates preparing for a First Amendment protected rally as tantamount to planning to beat on police and break windows.  The Government cannot – will not – confront the dividing lines and distinctions between the roughly 100 people who inexcusably fought with police and the *hundreds of thousands* of U.S. citizens who merely exercised their First Amendment rights.

42. In Count I, Kelly Meggs is charged with entering into a conspiracy to "corruptly obstruct, influence, and impede an official proceeding, that is, the Certification of the Electoral College vote, in violation of Title 18, United States Code, Section 1512(c)(2).

43. There is no allegation, finding of fact, or evidence to support this charge.

44. It is also manifestly absurd – meaning it cannot be proven beyond a reasonable doubt.

45. The Government cannot prove that Kelly Meggs sought to make the Speaker of the U.S. House of Representatives, Nancy Pelosi, President by forcing a vacancy in the offices of President and Vice President.

46. In Count II, the Government alleges that Kelly Meggs "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is the Certification of the Electoral College vote, and did aid and abet others known and unknown to do the same.

47. This again cannot be proven beyond a reasonable doubt.

### ARGUMENT

48. Rule 17 of the Federal Rules of Criminal Procedure provides: "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1).

49. "Rule 17 provides a limited grant of authority, mentioning pretrial production only in connection with court approval." *US v. Binh Tang Vo*, 78 F.Supp.3d, 171, 178 (D.D.C. 2015) (noting Fed. R. Crim. P. 17(c)(1)). The purpose of production of documents pretrial is "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). Pretrial production is appropriate where the party issuing the subpoena shows "(1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700.

50. In the present case, Defendant has met all these requirements.

**SUBPOENA FOR RECORDS**

51. The Defendant Kelly Megg requests that the Court direct the Clerk to prepare a properly formatted subpoena to the Custodian of Records of the United States Capitol Police 119 D Street, NE Washington, DC 20510 (202) 224-1677 Email: USCapitolPolice@uscp.gov

52. The Court probably ought to order that the existing Protective Order shall include any documents or information produced by the U.S. Capitol Police and enable the USCP to redact and/or designate as sensitive or highly sensitive information about security arrangements, law enforcement techniques, or pending criminal proceedings against those responsible for the pipe bombs. Defendant Kelly Meggs, by counsel, is not inquiring into those matters but instead is seeking additional proof that Defendant Kelly Meggs' alleged mere presence around and for a few minutes inside the U.S. Capitol did not obstruct, hinder, attempt to obstruct, or play any role or constitute any factor in the recess of the Joint Session of Congress on January 6, 2021, 20 minutes *before* he is alleged to have been pushed through an open door by the crowds behind him.

53. Specifically, the Court is asked, invoking the Defendants' rights, to order the production of:

    a. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on the discovery of pipe bombs on January 6, 2021, near the U.S. Capitol building (within 10 blocks) (subject to the exclusions or redactions suggested above).

    b. Any and all documents, communications, reports, letters, text messages,

emails, or other records relating to, discussing or reporting on the U.S. Capitol Police officially advising the Joint Session of Congress and/or the House of Representatives or U.S. Senate separately, on January 6, 2021, to recess.

c. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on whether or not the Joint Session of Congress and/or the House of Representatives or U.S. Senate separately, on January 6, 2021, should recess.

d. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on the U.S. Capitol Police officially advising Members of Congress to evacuate the U.S. Capitol building on January 6, 2021.

e. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting the reasons why the Joint Session of Congress should (if written beforehand) or did (if written after the fact) recess on January 6, 2021.

f. Any and all video recordings recorded at about 2:40 PM showing the entrance to the U.S. Capitol where Kelly Meggs allegedly entered the U.S. Capitol building, including audio recordings where possible, body cam (body worn) cameras of those officers stationed at or near the entrance when Kelly Meggs allegedly entered the building at around 2:40 PM on January 6, 2021.

g. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting which officers (who may be identified by a code number as long as their testimony can be

arranged by identification in some manner) were stationed at about 2:40 PM at the entrance to the U.S. Capitol where Kelly Meggs allegedly entered on January 6, 2021.

h. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting what, if anything, officers at or near the entrance where Kelly Meggs is alleged to have entered at around 2:40 PM on January 6, 2021, including what exactly the officers said to in any way discourage or deter anyone from entering.

i. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting how the entrance where Kelly Meggs is alleged to have entered at around 2:40 PM on January 6, 2021, was open at around 2:40 PM.

## CONCLUSION

54. In conclusion, and for these reasons, Defendant requests the court approve and issue the subpoena and direct that the U.S. Capitol Police provide the requested documents.

Dated: November 26, 2021        RESPECTFULLY SUBMITTED
                                KELLY MEGGS, *By Counsel*

                                Jonathon A. Moseley, Esq.

                                USDCDC Bar No. VA005
                                Virginia State Bar No. 41058
                                Mailing address only:

5765-F Burke Centre Parkway, PMB #337<br>
Burke, Virginia 22015<br>
Telephone:  (703) 656-1230<br>
Contact@JonMoseley.com<br>
Moseley391@gmail.com

### **CERTIFICATE OF SERVICE**

  I hereby certify that on November 26, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

   **Jeffrey S. Nestler**
   U.S. ATTORNEY'S OFFICE
   555 Fourth Street NW
   Washington, DC 20530
   202-252-7277
   jeffrey.nestler@usdoj.gov

   **Kathryn Leigh Rakoczy**
   U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
   555 Fourth Street, NW
   Washington, DC 20530
   (202) 252-6928
   (202) 305-8537 (fax)
   kathryn.rakoczy@usdoj.gov

   **Justin Todd Sher**
   U.S. DEPARTMENT OF JUSTICE
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   202-353-3909
   justin.sher@usdoj.gov

   **Troy A. Edwards, Jr**
   U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
   555 4th Street, NW
   Washington, DC 20001
   202-252-7081
   troy.edwards@usdoj.gov

   **Alexandra Stalimene Hughes**
   DOJ-Nsd
   950 Pennsylvania Ave NW

Washington DC, DC 20004
202-353-0023
Alexandra.Hughes@usdoj.gov

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002
202-616-2706
louis.manzo@usdoj.gov

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
ahmed.baset@usdoj.gov

_/s/ Jonathon Moseley_
Jonathon Moseley, Esq.