# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. |
| Complainant, | |
| v. | 1:21-cr-28-8-APM |
| KELLY MEGGS | |
| | Assigned to the Honorable Amit Mehta, District Court Judge |
| *(Styled as <u>USA v. Thomas Edward Caldwell</u> incorporating cases against multiple Defendants)* Defendant | |

## DEFENDANT'S KELLY MEGG'S SUPPLEMENT TO HIS MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR ISSUANCE OF A *SUBPOENA DUCES TECUM* TO THE U.S. CAPITOL POLICE

Comes now Defendant, Kelly Meggs, by counsel, and hereby provides this supplement to his Memorandum of Law requesting that the Court, by the Clerk, issue a subpoena to the Custodian of Records of the U.S. Capitol Police and for his grounds states as follows.

This information was ***not*** available until November 26, 2021.

The Court will understand that counsel must contest the Government's claim for the record on appeal and for the inevitable malicious prosecution lawsuits to follow.

But here, recall that the immediate, pertinent, important question is ***<u>The Defendants are entitled to the documents and the evidence, to the extent potentially or here likely to be exculpatory information</u>*** as required by *Brady v. Maryland, 373 U.S. 83 (1963)* ; See also, USA v Theodore F. Stevens, No. 1:08-CR-00231-EGS, U.S. District Court for the District of Columbia, Memorandum and Opinion by Judge Emett Sullivan, (Docket No. 257, December 22, 2008); Anna Stolley Persky, "A Cautionary Tale: The Ted Stevens Prosecution," <u>Washington</u>

Lawyer *[publication of the D.C. Bar.]*, October 2009.[1]

If potentially exculpatory, indeed likely exculpatory, information is withheld, the Defendant is entitled to dismissal of the charges before trial (or if the withholding emerges at trial, a directed verdict at trial.)

The issue is **_NOT_** at this time what the facts ultimately show, or what a jury might decide, although the state of the evidence so far requires dismissal of the case against Kelly Meggs.

The question is whether there is sufficient grounds to issue the *subpoena duces tecum*.

To place the controversy in proper context:

Kelly Meggs, by counsel, is pursuing an educated gamble that if the U.S. Capitol Police does not alter documents (not saying they will, just being precise about the situation) the documents will prove Kelly Meggs innocent of the charges under Counts I and II.

That is, the documents will show whatever they show.

Kelly Meggs has established the importance of finding out what the documents show.

And they will show whatever they show.

The documents will speak for themselves.

The issue is whether there is sufficient evidence – including the sworn testimony of the Chief of the U.S. Capitol Police Sund before the U.S. Senate – to support Defendant Kelly Meggs' request for the issuance of a subpoena duces tecum to obtain the direct documentary evidence further illuminating this very question.

And the related issue is whether the Court or Court of Appeals must order the case under

---

[1] https://www.dcbar.org/bar-resources/publications/washington-lawyer/articles/october-2009-ted-stevens.cfm  According to the Internet archive service "The Way Back Machine," the D.C. Bar deleted this article in June 2020, and therefore a copy (retrieved from the Way Back Machine) is hereby attached.  Counsel had personally reviewed this article years ago at the D.C. Bar's website, before it was deleted by the D.C. Bar.

Counts I and II dismissed either on the evidence or the violation of *Brady v. Maryland.*

If the documents produced by subpoena establish that there is no triable issue of fact for the jury to decide, then this is not a question of a disputed fact for the jury.

Is there a dispute?

On November 26, 2021, the U.S. Attorney's Office for the District of Columbia [2] filed a "Government's Opposition to Defendant's Third Motion for Release" concerning co-Defendant Kenneth Harrelson found at ECF Dkt. # 499.

Although primarily about other issues, the Government responds in part to related issues raised by Kenneth Harrelson, by counsel, concerning the U.S. Capitol Police's invoking of Rule I, Clause 12(b) of the Rules of the House of Representatives at 2:18 PM to immediately recess the Joint Session of Congress.

The Government's response emphasizes and underscores the need for the issuance of this subpoena.

The Government response states on page 1:

> It is Defendant Harrelson's burden to come forward with "new and material information," which "must consist of truly changed circumstances, something unexpected, or a significant event." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (internal citation and quotation omitted). He has not come close to meeting that burden here

This of course would be the same burden the same U.S. Attorney would argue Kelly Meggs must meet in his planned motion for release in the immediate future (although Meggs seeks to build a foundation for that motion).

---

[2] and we should remember that there is one and only one U.S. Attorney for the District of Columbia as the one and only legal representation in all of these hundreds of cases, presumably presenting a single, unified legal position, on whose behalf Assistant U.S. Attorneys assist the U.S. Attorney. Thus, it would be misguided to pretend that in each case the position on the same facts would be different.

Yet, that burden cannot be met if the Government improperly withholds documents and evidence to which the Defendants here are entitled.

If Kelly Meggs cannot get the documents to which he is entitled on these very questions, then how would he meet his burden? The Government would be playing hide and seek with the evidence. How then could Meggs meet his burden?

Here, the burden involves release from detention – which is not the same as conviction at trial. Kelly Meggs faces the same need to move for release from detention on bail. Presumably, the U.S. Attorney offers the same, consistent position on the same facts and the law, and not inconsistent positions from one Defendant to another, where the facts are the same.

And this is not idle speculation. It is counsel's responsibility to his client to seek release from detention. However, observing how these matters have been treated, counsel is required to build a foundation for release from pre-trial detention, which he will be filing.

The Government's response to Harrelson definitively establishes the importance and necessity of Kelly Meggs receiving from the U.S. Capitol all pertinent documents and information about that very topic.

And Kelly Meggs reasonably and generously accepts that documents produced may require redaction or designations of "sensitive" or "highly sensitive" under the Protective Order (recognizing that the Protective Order may need to be extended accordingly).[3]

---

[3] Counsel is not suggesting that the mere existence of a dispute makes that dispute material. Here, the question is material because it could directly negate charges of conspiracy or advance plan or intent, required for *mens rea*. The dispute emphasizes the necessity to know the actual truth from the actual documents and communications generated contemporaneously. But the reason those documents are material is dismissal of Counts I and II of the Indictment against Kelly Meggs should be dismissed if that evidence were to show that (a) the Defendant did not cause any impact upon the Joint Session of Congress, (b) discovery of pipe bombs was the cause, (c) Defendant Kelly Meggs was incapable of and had no intention to disrupt the Joint Session of Congress and no unbiased, rational person could believe that Kelly Meggs was trying to or did

The point is that there is sufficient reason for Kelly Meggs to receive the actual documents and the actual evidence from the U.S. Capitol Police, which hopefully will definitively and authoritatively establish what the truth is.

And recall that "exculpatory" includes evidence of actual innocence, evidence that would justify a lesser charge, evidence that would establish defenses, or evidence that would justify a lesser sentence.

Here, evidence that would justify release from pre-trial detention is also a different standard.

On Page 3, the Government responds to Defendant Harrelson:

> First, he alleges that Congress recessed on that afternoon of January 6 because of reports of a pipe bomb, not because Defendant Harrelson and hundreds of others were in the process of storming the Capitol. ECF 483 at 19-20.

Of course, the government itself contends that only 165 people have been charged with "assaulting" or "hindering" or "impeding" law enforcement. "At least 165 defendants have been charged with assaulting, resisting or impeding officers or Capitol employees, including more than 50 people charged with using a deadly or dangerous weapon or causing serious bodily injury to an officer, the Justice Department said in July."[4]

Thus only about "50 people [are] charged with using a deadly or dangerous weapon or causing serious bodily injury to an officer, the Justice Department said in July."  *Id.*

And they *ought to be charged* to the maximum extent of the law.

---

obstruct the Joint Session of Congress,.  So the dispute highlights the need for the documents by subpoena duces tecum to the U.S. Capitol Police.  The prosecution asserts that Harrelson's contentions – the same as Kelly Meggs – are inaccurate.  *But the documents will show this.*

[4]    Michael Kunzelman, "Capitol rioters enter 1st guilty pleas to assaulting police," Associated Press, August 6, 2021, accessible at: https://apnews.com/article/capitol-siege-9fe7a03f8cc2dd121e2f81cff4e90c47  (one of several reports of the Government's estimate).

However, smearing and prosecuting 700 people much less hundreds of thousands of people for what only about 50 people actually did is McCarthyite political persecution and time for the unleashing of the malicious prosecution lawsuits.

Note also that the body-worn cameras or body cams would make this unmistakable, so the vagueness and lack of specifics here is intentional prevarication.  The number and identity of those who crossed the line to serious and unjustifiable criminality one would think is permanently and clearly recorded on body-worn cameras.Among these three different possibilities, probably fewer than 100 numbskulls, possibly beer-ed up, scuffled with police, while the balance of the 165 people *peacefully* "hindered" (whatever that means) or *peacefully* "impeded" (whatever that means) law enforcement.  Remember that it is the Government itself who spreads the 165 people among three categories, one violent and the other two non-violent and ill-defined and more drama (because of the lack of definition) than substance.   It is not Defendant who exaggerates the 165 to include those who merely "hindered" or "impeded" law enforcement.  Those are the Government's arguments.

If 165 people had all assaulted police, the Government would have said so.

But it did not say that.

And the Government would be acting like it, making those Defendants the priority for identification, apprehension, and prosecution.  But the Government demonstrates by its action the opposite, roving all over the country assaulting innocent people in their homes at dawn in "secret police" tactics not seen since the Soviet Union collapsed, unless one counts Venezuela.

The Government's actions betray their claims.

The Government is scarcely interested in the roughly 50 people who scuffled with police.

Instead, the Government is intensely interested in (investing massive resources in) those

who will not "**KNEEL BEFORE ZOD**" and share the political opinions of a current majority of political interests heading for a disastrous loss of control in November 2022. Reportedly, but not confirmed, the Government is demanding "loyalty oaths" that the election was perfect as a condition of plea deals, then (reportedly) forbidding discussion of those plea deal conditions.

The FBI is roving the country busting down doors like the secret police of those whose crime is disagreeing with the political partisan establishment, but apparently not all that interested in the 50 or so people who battled with police.

However, the prosecution suffers from a total vacuum, like the void of interstellar space, of any facts or evidence that Kelly Meggs had any affect or impact whatsoever or could ever imagine that he would upon the January 6, 2021, Joint Session of Congress.

In the face of a complete absence of any evidence much less any credible explanation for how Kelly Meggs could have any effect upon the Joint Session of Congress, the testimony of Chief Sund that the discovery of pipe bombs caused evacuation becomes authoritative. It is not as if the Government has offered any rational or credible explanation for Kelly Meggs to have caused the recess of the Joint Session of Congress.

If the documents produced in response to the Subpoena were to say "It was that damned Kelly Meggs! Meggs is the reason!" then we would learn something very different.

But at present, we got nothin'.

The case against Defendant Kelly Meggs is like alchemists claiming that certain people designated as witches are responsible for causing a dragon to swallow the sun during an eclipse.

The video evidence proves that a demonstration – for which the U.S. Capitol Police issued permits for the Capitol grounds for January 6, 2021 – gathered a vastly, vastly, massively-larger than expected turn-out of demonstrators and some people went out of control swept up in

"the madness of crowds" as experts have described such phenomenon.

The crowds vastly exceeded expected turn-outs.

Kelly Meggs had no influence nor ability to influence the turn-out of the crowds, especially as contrasted with then President Donald' Trump's 83 to 86 million twitter followers, whom Trump urged to attend the demonstrations on January 6, 2021.  Although Kelly Meggs and others virulently oppose the unconstitutional and unconscionable *McCarthyite* tactics of chilling and intimidating the exercise of First Amendment protected expression of free speech and political activity, it is ludicrous to compare innocent Donald Trumps' free speech to 83-86 million twitter followers not to mention Facebook followers to anything Kelly Meggs did or could do relating to January 6, 2021.

Kelly Meggs is not responsible for the happenstance that a crowd estimated by the U.S. Capitol Police to be around 10,000 demonstrated in the vicinity of the U.S. Capitol building, and some of them went off the rails, and as many as 500,000 to 1 million were estimated to have been demonstrated throughout Washington, D.C.

Kelly Meggs had no control nor influence over the number of attendees nor the superseding, intervening, criminal acts of others unrelated to and unknown by him.

But the Government's drum beat that "hundreds of others were in the process of storming the Capitol" is a fabrication.  While fewer than 100 deserve the Government's attention for scuffling with police, and should ***not*** receive light sentences, the vast majority of others who took selfies with U.S. Capitol Police officers, prayed in a circle on their knees in the Rotunda, took photographs of the museum-like building which is open to the public, walked carefully, respectfully, and meticulously within the lines of velvet crowd lines, and admitted the building with two gift shops, a cafeteria in the basement as well as others in the office buildings open to

the public, and public viewing galleries open to the public for watching Members of Congress in session, did not "storm" the Capitol and the Government should be ashamed of repeating the claim. Again, the Government deceives this Court and the public with the claim that the Capitol is "secured" 24 hours a day which has nothing to do with the museum-like very public building being _closed_. "Secured" does not mean "closed." The National Air and Space Nusem is "secured" 24 hours a day, yet welcomed 4.5 million visitors and tourists from around the world in 2019. Thus the Court is confronted on its face with statements lacking in candor to the tribunal, intending to induce court action based upon misrepresentations.

On Page 4, the Government responds to Defendant Harrelson:

> **There is no support for Defendant Harrelson's allegation that his actions on January 6 did not contribute to the obstruction of Congress's Joint Session. Regardless, that is a fact for a jury to decide at trial; it certainly does not support his release.**

On the contrary, there is no support for the allegation that any of the Oath Keepers' actions on January 6 _DID_ "contribute in any way to the obstruction of Congress' Joint Session."

Operating in a complete vacuum like the void of interstellar space, the Government has offered no evidence, whether found by the Grand Jury or otherwise, that any of the Oath Keepers planned to nor did have any effect on the Joint Session, other than expressing their opinions under the First Amendment.

The most that the Government can muster is to dissemble and prevaricate that people just walking in a line are in "formation" improperly called a "stack."

This brings to mind the Congressman in a rural Southern county who more than a century accused his political opponent of being a **_THESPIAN!_** counting on the uninformed voters confusing a "thespian" (stage actor) with a (then seen as) a sexual deviant (in the rural culture of long ago.

Here, hoping to beguile inattentive or uninformed potential jurors, journalists, and others, and to improperly frighten and intimidate the innocent into unfair plea deals, the Government calls people just walking peacefully in a line, some stopping to sing "God Bless America" (or the National Anthem) as storming the Capitol in a "military formation" called a "stack."

Now, forevermore, school teachers leading their students in a line have to be called insurrectionists leading a military "stack" -- that is just people walking in a line.

On Page 5, the Government responds to Defendant Harrelson:

> To take one example, on December 25, 2020, co-defendant (and Defendant Harrelson's team lead) Kelly Meggs wrote in a Signal thread on which Defendant Harrelson was also a member (titled "OKFL Hangout"):
>
> **We need to make those senators very uncomfortable with all of us being a few hundred feet away. Our peaceful protests need to have a little more teeth. They aren't listening. Now we aren't talking about crossing the line. But we need to be standing on the line!!! It's all bad from here guys. We need Trump because it will make our jobs easier. There is gonna be blood in the streets no matter what.**

Thank you, prosecutors. I will use this quote in closing arguments at trial to prove Kelly Meggs' actual innocence. The Government's chosen "evidence" that Kelly Meggs proclaimed "***Now we aren't talking about crossing the line. But we need to be standing on the line!!!***" should be a directed verdict of not guilty.

Kelly Meggs echoes the Founding Fathers who tried to find a way to avoid the American Revolution dozens of times: "**It's all bad from here guys. We need Trump because it will make our jobs easier. There is gonna be blood in the streets no matter what.**"

Predicting that the insanity of the Left is going to lead to a bad result unless the

insurrection Left stops is a prediction, not a desire.

## CONCLUSION

In conclusion, and for these reasons, Defendant requests the court approve and issue the subpoena and direct that the U.S. Capitol Police provide the requested documents.

Dated:  November 27, 2021            RESPECTFULLY SUBMITTED
                                     KELLY MEGGS, *By Counsel*

                                     Jonathon A. Moseley, Esq.

                                     USDCDC Bar No. VA005
                                     Virginia State Bar No. 41058
                                     Mailing address only:
                                     5765-F Burke Centre Parkway, PMB #337
                                     Burke, Virginia 22015
                                     Telephone:  (703) 656-1230
                                     Contact@JonMoseley.com
                                     Moseley391@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
jeffrey.nestler@usdoj.gov

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
kathryn.rakoczy@usdoj.gov

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
justin.sher@usdoj.gov

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
troy.edwards@usdoj.gov

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
Alexandra.Hughes@usdoj.gov

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002
202-616-2706
louis.manzo@usdoj.gov

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
ahmed.baset@usdoj.gov

_____
Jonathon Moseley, Esq.