**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. |
| Complainant, | |
| v. | |
| KELLY MEGGS | 1:21-cr-28-8-APM |
| *(Styled as USA v. Thomas Edward Caldwell incorporating cases against multiple Defendants)* | Assigned to the Honorable Amit Mehta, District Court Judge |
| Defendant | |

**DEFENDANT'S KELLY MEGG'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN FURTHER SUPPORT OF
ISSUANCE OF A *SUBPOENA DUCES TECUM* TO THE U.S. CAPITOL POLICE**

Comes now Defendant, Kelly Meggs, by counsel, and provides this Reply Memorandum of Points And Authorities in Further Support of his Motion for Issuance of a Subpoena Duces Tecum to the U.S. Capitol Police (ECF Nos. 500, 501) and for his grounds states as follows.

**I.    INTRODUCTION**

Actually, the Government's Opposition strongly supports and justifies Kelly Meggs' request for a subpoena to the USCP.  However, the issue is confused:

You don't investigate because you already know the information.  You investigate to find out the information.  On the other hand, one does not investigate without a reasonable basis for believing there might be something there to find.  Meggs has shown this is sufficiently likely.

**II.    LEGAL STANDARD**

The question is whether a subpoena must issue because there is a need to actually see the documents that will show whether or not these Defendants had any responsibility for the recess

1

of the Joint Session of Congress on January 6, 2021.  As the government has set forth, 'the

Supreme Court in *Nixon*; according to the Supreme Court, the party seeking to enforce a

subpoena must demonstrate:

> (1) that the documents are evidentiary and relevant;
> (2) that they are not otherwise procurable reasonably in advance of trial by
> exercise of due diligence;
> (3) that the party cannot properly prepare for trial without such production and
> inspection in advance of trial and that the failure to obtain such inspection may
> tend unreasonably to delay the trial; and
> (4) that the application is made in good faith and is not intended as a "fishing
> expedition."

418 U.S. at 699-700.  The District of Columbia Circuit has set forth the standard based on *Nixon*:

> Admittedly, it will often be difficult at the pretrial stage to determine with
> precision the admissibility of certain documents; therefore, if a document is
> arguably relevant and admissible under the Rules of Evidence, the Nixon
> "evidentiary" requirement is likely satisfied.
>
> In addition to seeking documents that are both relevant and admissible, a Rule
> 17(c) subpoena must also be specific. Although the Supreme Court in Nixon
> requires that a party issuing a Rule 17(c) subpoena identify with specificity the
> documents being sought, the Court recognized that in some instances it may be
> impossible to "describe fully" the documents; therefore, the Court concluded that
> the specificity requirement could be satisfied if there is a "sufficient likelihood,"
> demonstrated through rational inferences, that the documents being sought
> contain relevant and admissible evidence..

*United States v. Libby*, 432 F. Supp. 2d 26, 31, (D.C. Cir. 2006) (*citing Nixon*, 418 U.S. at 700)

(further internal citations omitted).

Defendant Kelly Meggs has – and continues here – to show that there is a sufficient

likelihood that the requested documents and information are relevant to possible dismissal of the

charges whether at trial or before trial, which makes the documents clearly relevant, not

reasonably procurable otherwise, and the undersigned makes this request in good faith.

But the question at hand is whether the likelihood is sufficient that the demanded documents and information could contain – or lead to – exculpatory evidence. "If a defendant is aware of specific information contained in the file (e. g., the medical report), he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial." *Pa. v. Ritchie*, 480 U.S. 39, 60, 107 S. Ct. 989, 1003, 94 L. Ed. 2d 40, 59, (1987).

The scope of *Brady* is very broad. *See* United States Justice Manual (USJMM) § 9-5.001. For instance, a "prosecutor must disclose information that is inconsistent with any element of any crime charged" and:

> must disclose information that either casts a substantial doubt upon the accuracy of any evidence---including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of the evidence. This information must be disclosed regardless of whether it is likely to make the difference between convictions and acquittal of the defendant for a charged crime.

*Id.*

The disclosure requirement, "applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." *Id.*

The question at hand is also whether the demanded documents and evidence are material: Could the demanded documents and information change a guilty verdict into an acquittal? Here, the charges only speculate that the Defendant, singing the National Anthem on the Capitol steps around 2:35 PM, caused the disruption of the Joint Session of Congress on January 6, 2021, at

2:18 PM, or even if the court accepts the Government's Opposition's additional facts that recess occurred, "…—Senator Grassley at 2:13 p.m. in the Senate chamber and Representative McGovern at 2:29 p.m. in the House." (ECF 538, p.6 (citing chamber, see 167 Cong. Rec. S18, H85 (daily ed. Jan. 6, 2021)—declared the respective Houses in recess subject to the call of the chair.)

The government's argument makes it even more highly improbable that there will be any documents about the Defendant causing or seeking to disrupt the official proceeding of the Joint Session of Congress. Instead it highlights the relevance of the information.

Somehow, The Politico (see Exhibits A and B ) and CNN (see Exhibit C and D) have publicly released privileged legal memoranda from attorneys Jenna Ellis, Jay Sekulow, and John Eastman advising Donald Trump's senior team on the Trump team's strategy for the Joint Session of Congress.[1] ***All of those strategy memoranda make clear that Trump needed the Joint Session of Congress to be held and carried through to its conclusion – but following his plan.***

*There is no actual evidence that anyone (relevant to this prosecution) wanted to stop the certification of the Electoral College votes* – although the documents demanded will speak for themselves. Many wanted to demand that the Joint Session count the votes as they believed it should be done. But that is different. In any event, the documents will show what they show.

Therefore, there is a sufficient likelihood that that the demanded documents will prove that Kelly Meggs is innocent of Counts I and II.

This does not mean that Kelly Meggs is arguing certainty of what the documents say, but

---

[1]      The Congress is the U.S. Attorney's Office's client. While prosecutors always act on behalf generally of the rule of law, they usually also have an actual complaining victim. Here, this prosecution concerns charges of offenses against the U.S. Congress and the USCP. When the clamor of the political class is presented here through the U.S. Attorney, it must rise to standards of evidence and fact.

has laid a sufficient foundation as to why the documents must be produced.

### III.    STATEMENT OF FACTS

On September 17, 2021, a new Chief of the USCP, Thomas Manger, as one of the government entities bringing the complaint against these Defendants in this case, admitted and confessed among other things, at time stamp 00:18:10:

> **"In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demonstrations."**

"USCP News Conference on "Justice for J6" Rally" was recorded and broadcast live by C-SPAN, and is permanently recorded for viewing at:  https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally

And again at time stamp 00:20:09 --

> **"We have multiple demonstrations every day."**

Again, these are the statements – admissions and confessions as admissible evidence – of one of the two complaining victims agencies whose interest the prosecution is vindicating. These are not the comments of random observers, but actual admissions and confessions.

Thus, the mere existence of demonstrations or the presence of demonstrators did not obstruct any official proceeding, according to the new head of the complaining witness agency.

However, the documents demanded will illuminate that more precisely and thoroughly. Did the mere existence of demonstrators milling about outside the Capitol on grounds when the USCP issued six (6) permits for demonstrations at nearby locations on the same side of the U.S. Capitol on January 6, 2021, disrupt the Joint Session of Congress?

I don't know.  We'll find out.

I'm betting no.  But we need to find out.

The Opposition attempts to portray the documents demanded as tangential, of little importance, or "a fishing expedition."

On the contrary, the Joint Session of Congress recessed when the USCP officially advised the presiding officer at or just before 2:18 PM that the House should recess pursuant to Rule I, Clause 12(b) which empowers the presiding officer to immediately recess without a vote when there is a threat to the House.[2]   A similar event transpired in the U.S. Senate chamber. (The Joint Session had just split to fulfill the _actual_ duties of the Joint Session to hear and resolve disputed Electoral College votes, after an objection to Arizona's Electors.)

Thus, the triggering event for the recess of the Joint Session was the recommendation from the USCP.   "_WHY_ did they recess the Joint Session?" goes to the core of this prosecution.

Kelly Meggs contends that he did not do anything which in any way disrupted the Joint Session of Congress, could have disrupted it, was any sort of attempt to disrupt it, ever planned to disrupt the Joint Session, ever agreed with anyone about disrupting it, or aided and abetted anyone in disrupting the Joint Session of Congress.

If the USCP is sitting on documents proving Kelly Meggs' defense, then the failure to produce them would require the dismissal of this case or vacating any conviction.

The Court should understand that the Government has offered no concept of how peaceful Defendants singing the National Anthem at 2:35 PM could be capable of disrupting the session earlier at 2:18 PM.

But, in addition, the analysis, discussion, communications, and evaluation within the USCP of whether or not to recommend a recess to the Joint Session will also speak to the allegations that these Defendants aided and abetted, conspired to, or attempted to obstruct an

---

[2]       See, "Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1,"  Congressional Record Vol. 167, No. 4, (House of Representatives - January 06, 2021).

official proceeding.  Discussions within the USCP as to _WHY_ they recommended a recess would illuminate whether it had anything to do with the Oath Keeper Defendants here (even if they are not specifically named) aiding and abetting, attempting, or conspiring to obstruct the official proceeding.

Further, if the USCP told Congress to recess at 2:18 PM – in person in the well of the Chambers – the cause must have been significantly **_earlier_** than 2:18 PM, probably before 2:00 PM.  These documents would show _when_ the threat was identified and _when_ the threat matured to requiring a recess.  These documents would illuminate that any problem occurred long before these Defendants were singing the National Anthem on the Capitol steps around 2:35 PM.

Kelly Meggs is accused in Counts I and II of the indictment, now repeated as the Sixth Superseding Indictment ("SSI"), with disrupting the Joint Session of Congress on January 6, 2021, by some mysterious, unexplained magical methods, as are other Defendants in this case.  (SSI ¶ 36 as  to Count I) and (SSI ¶ 180 as to Count II)  .

The Grand Jury repeatedly indicted and re-indicted Kelly Meggs for:

**Count I** – Conspiracy under 18 U.S.C. 371 (SSI ¶ 36) for the conspiratorial purpose of "The purpose of the conspiracy was to stop, delay, and hinder the Certification of the Electoral College vote."  (SSI ¶ 38).  That is, the conspiracy alleged is to violate 18 U.S.C. 1512(c)(2).

**Count II** – Violating 18 U.S.C. 1512(c)(2) alleging he "attempted to, and did, corruptly obstruct, influence and impede an official proceeding, that is the Certification of the Electoral College vote, and did aid and abet others known and unknown to do the same."  (SSI ¶ 180)

Thus both Count I and II concern allegedly disrupting the Joint Session of Congress.  Unlike some other cases which include more than one alleged purpose of a conspiracy, in _USA v. Caldwell,_ Count I is exclusively about the same statute charged in Count II.

7

So the two big counts here both depend upon the documents demanded in this subpoena.

The Grand Jury alleges that *after the Joint Session of Congress had already recessed at 2:18 PM*, **at 2:24 PM** "Person One" told Kelly Meggs to "Go to SOUTH side of U.S. Capitol" and Person One then followed with a message "That's where I am going   To link up with [PERSON TEN.]" (SSI ¶ 132).

The Grand Jury alleges that *after the Joint Session of Congress had already recessed at 2:18 PM*, **at 2:25 PM**   Person One forwarded Person Ten's message but Person One also instructed the Oath Keepers "Come to South Side of Capitol on steps" along with a photograph showing the location where he instructed Oath Keepers to go. (SSI ¶ 133).

The Grand Jury alleges that *after the Joint Session of Congress had already recessed at 2:18 PM*, **at 2:26 PM**   Oath Keepers including Kelly Meggs and his wife "continued walking northbound along the exterior of the Capitol.  They then turned right and entered the plaza in front of the east side of the Capitol."[3]  (SSI ¶ 134).  Of course, the U.S. Capitol is 751 feet long. [4]  So it would take several minutes for those walking northbound to reach "the plaza" which is presumably in the center of the driveway of the U.S. Capitol on the East side, consisting of the vehicle driveway (but there is a giant park between the East face of the U.S. Capitol and 2nd Street SE and NE), particularly to wade through crowds of other, unrelated people.

The Grand Jury alleges that *after the Joint Session of Congress had already recessed at 2:18 PM*, **at 2:33 PM**   other Oath Keepers arrived at the Capitol area ***by golf carts***.  (SSI ¶ 138). That is, they were nowhere near the Capitol until around 2:33 PM.

---

[3]      "Plaza" is poorly defined given the vast size of the Capitol Grounds, measuring 126 acres.  Architect of the Capitol, https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building

[4]      Architect of the Capitol, https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building

The Grand Jury alleges that *after the Joint Session of Congress had already recessed at 2:18 PM*, **at 2:35 PM** Oath Keepers including Kelly Meggs and his wife maneuvered up the steps on the east side of the Capitol—each member keeping one hand on the shoulder of the other in front of them.

## IV.   CONSULTATION AND NARROWING OF THE REQUEST

After the last status hearing, the Government and Kelly Meggs, by counsel, consulted as the Court directed.  See Exhibits E and F.  Kelly Meggs requested in writing:

a) Not everything about pipe bombs is necessary, such as the status of the investigation, leads, after January 6, 2021, etc.  That would be interesting but not relevant to the defense of these Defendants like Kelly Meggs.

b) However, anything about the threat or perceived threat between 12:50 PM and 2:40 PM from the discovery of pipe bombs is not just requested but obligatory as production.  I don't want a non-obligatory accommodation.

c) Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on whether or not the Joint Session of Congress and/or the House of Representatives or U.S. Senate separately, on January 6, 2021, should recess.

d) Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on the USCP officially advising Members of Congress to evacuate the U.S. Capitol building on January 6, 2021.[1]

e) Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting the reasons why the Joint Session of Congress should (if written beforehand) or did (if written after the fact) recess on January 6, 2021.

This is a reduced list from Kelly Meggs' original motion in an effort to confer, in addition to follow up emails requesting the information.

## V.   ARGUMENT

### A. DISCLOSURE OF POTENTIALLY EXCULPATORY IS MANDATORY, ON PAIN OF DISMISSAL OF THE CASE

This is a core, gold standard, top shelf, pure incidence of a requirement for the production

of exculpatory information.  The documents are all but certain to be exculpatory.  Documents or information exclusively within the possession of the U.S. Government must be disclosed if it is likely to contain or lead to the discovery of (including identifying witnesses):

    i)    Evidence of actual innocence of the charges

    ii)    Evidence of an alternative explanation or cause or otherwise raising reasonable doubt on the standard of a defendant is presumed innocent until proven guilty beyond a reasonable doubt.

    iii)    Evidence that a defendant might be guilty of a lesser offense only

    iv)    Evidence of an affirmative defense

    v)    Evidence of the credibility of prosecution witnesses on impeachment

    vi)    Mitigating factors arguing for imposition of a lesser sentence

It is highly relevant that the Defendant is explicitly asking for specific information, not passively hoping that the prosecution will notice and think to disclose information on its own initiative.

> **"The test of materiality in a case like Brady in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made. [14]..."**

*United States v. Agurs*, 427 U.S. 97, 106, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favor-able character for the defense, and (c) the materiality of the evidence.  * * *

*Moore v. Illinois* 8212 5001, 408 U.S. 786,794-795,  92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)

> If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the

> prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made.

*United States v. Agurs*, 427 U.S. 97, 107, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.20 Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.

*Id.* at 112.  To extend this point, the U.S. Supreme Court is saying that the requirement that an accused be presumed innocent until proven guilty beyond a reasonable doubt is a principle that applies to all aspects of the case, including whether a failure to disclose potentially exculpatory information violates the Due Process Clause.

> Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an accused,"  *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend").

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

## B.  GOVERNMENT RECOGNIZES THE RELEVANCE OF DEFENDANT'S REQUEST.

The Government's Opposition hopes to feed the Defendants more random videos and see if people will go back to sleep –

> "We have offered to walk Defendant Meggs's counsel
> through the discovery and assist him in identifying this
> <u>footage</u> among the discovery materials.1,"

(ECF 538 at p. 3). *(Emphasis added.)*

Kelly Meggs is not interested in more "<u>footage</u>" (video).

The government does not genuinely contest the specific basis supporting the relevance of the request -- recognizing that both House and Senate, in addition to the Joint Conference, recessed <u>before</u> Mr. Meggs was on the Steps of the Capitol, but instead attempts to shift the argument to what other documents could exist from the Capitol Police.

> "As seen on the official video feeds of the Senate's and
> House's proceedings, Vice President Pence was still
> presiding over the Senate chamber as of 2:10 p.m.

(ECF 538 at p. 4).

> "Speaker Pelosi was still presiding over the House chamber
> as of 2:14 p.m…"

(ECF 538 at p. 5).

> The defense has not articulated, and we are not aware of,
> what other documents or pieces of evidence would be in the
> *Capitol Police*'s possession that would explain why the
> presiding officers of the two chambers—Senator Grassley at
> 2:13 p.m. in the Senate chamber and Representative
> McGovern at 2:29 p.m. in the House chamber, *see* 167 Cong.
> Rec. S18, H85 (daily ed. Jan. 6, 2021)—declared the
> respective Houses in recess subject to the call of the chair.

(ECF 538, p. 6).

Again, that's why we find out by asking for and looking at the actual documents.

The subpoena seeks documents, communications, reports, alerts, emails, texts, etc. as to why the USCP recommended a recess to the presiding officer.

## C.  GOVERNMENT OPPOSITION DOES NOT UNDERSTAND

**SUBPOENA GOES TO THE VERY CORE AND HEART**

For the USCP to officially invoke Rule I, Clause 12(b) at 2:18 PM to recess the House and about the same time the Senate would require decision-making probably no later than 2:00 PM including the physical walk over to the well of the House and the Senate chambers.

According to the indictment by the Grand Jury, these Defendants arrived on the Capitol Steps, mostly close together, at around 2:35 PM, where they  walked in a conga line and sang the National Anthem. They did what school children, families, and rock concert or music festival attendees do, putting one hand on their friend in front of them to avoid getting lost in the crowds. They were of course unarmed.

Thus, the documents sought by this subpoena could provide absolute proof that Kelly Meggs did not obstruct, stop, hinder, attempt to obstruct, or aid and abet anyone else in obstructing the Joint Session of Congress, when the USCP already decided prior to around 2:00 PM to recess the official proceeding due to the discovery of pipe bombs.

Again, this is to lay a foundation that the documents are required.

Yes, it is the responsibility of the prosecutors to dismiss this case based on what the Grand Jury alleged as fatal self-contradiction within the indictment itself.

> For though the attorney for the sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that "justice shall be done." He is the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314.

*United States v. Agurs,* 427 U.S. 97, 110-111, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

But no, that is not what this motion is asking.  The issue is whether there is a need for the demanded documents and a reasonable basis for demanding them, whether they could be exculpatory and material, whether they might change the outcome of the case, etc.

**Count III** -- Kelly Meggs is also charged with depredation of the Columbus Doors which were already damaged before the Oath Keepers arrived in the area at around 2:35 PM.  It would be impossible for Kelly Meggs to aid and abet anyone in doing damage when someone had already done the damage before the Oath Keepers reached the area.  (SSI ¶ 182)

<u>**Count X**</u> -- Kelly Meggs is also charged with deleting from his cellular phone "certain" media, files, and communications that allegedly showed Kelly Meggs engaging in First Amendment activity guaranteed by the protections of the U.S. Constitution (SSI ¶ 199-200).

Counts I and II are the heart of the indictment against Kelly Meggs.  The remaining two counts are both smaller charges in terms of penalties and unprovable by the prosecution.

This is not a "fishing expedition" as the Opposition complains, but the very core of the case, at least with regard to Counts I and II of the now Sixth Superseding Indictment.

 CONCLUSION

<u>Therefore Kelly Meggs is sufficiently likely to show that the evidence requested is specifically identified, shown to be relevant and likely admissible because the basis for why and when the USCP advised the two chambers to recess strikes at the core of </u> counts against Mr. Meggs, who is alleged to have "interfered" with the subject "proceeding."

This Requested Information strikes at the core of the allegations against this Defendant.

The Opposition argues that the subpoena demanded would circumvent the on-going discovery process.

The Government is flooding defense counsel with useless and irrelevant material under the show of complying with *Brady v. Maryland,* 373 U.S. 83 (1963).

Oceans of worthless material [5] not only do not comply with *Brady* but worse this flood is actually harming the preparation of these Defendants for trial.  The need to review thousands of hours of useless material means that Defense counsel are not able to prepare for trial.

The indiscriminate nature of disclosures is actually harmful to the Defendants' trial preparation.  The limited time, budget, and energy of Defendants' counsel is being drained.

The Government is not, however, turning over exculpatory information in the exclusive possession of the Government specifically identified and requested by Defendants' counsel. *Brady* obligations are at their peak and sharpest where Defendants' counsel could not discover exculpatory information, because the Government holds the only copy or copies.  Here, the FBI is raiding homes at dawn all across the country, thus taking the only copies of people's computers and smart phones.

Where this counsel specifically identifies in Defense' counsel's analysis of the case what is likely to be exculpatory, the analysis of Defendants' counsel is politely ignored – or worse, as here, resisted.  Remember that the same U.S. Attorney's Office is handling all of the same cases.

For these reasons, Defendant requests the court approve and issue the subpoena and direct that the USCP provide any responsive information to the requests.  Production of these documents must be understood as obligatory, not on the basis of the discretion of the Government in deciding what they feel like providing.

Dated:  December 13, 2021   RESPECTFULLY SUBMITTED
            KELLY MEGGS, *By Counsel*

---

[5] Much of the flood of material may be relevant to someone – but not to the individual Defendants receiving them.  Video fragments, failing to show context before and after, of unknown people at the Capitol take up lots of time and digital space but do not provide useful information to the Defendants who are not shown in those video clips and often were nowhere near the scenes shown in the video fragments.

Jonathon A. Moseley, Esq.

USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com
Moseley391@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
jeffrey.nestler@usdoj.gov

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
kathryn.rakoczy@usdoj.gov

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
justin.sher@usdoj.gov

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
troy.edwards@usdoj.gov

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
Alexandra.Hughes@usdoj.gov

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002
202-616-2706
louis.manzo@usdoj.gov

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
ahmed.baset@usdoj.gov

Jonathon Moseley, Esq.